UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:25-cv-803-MSN-WEF ) |
| GENTLEMEN SHEET METAL LTD., | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund"), initiated this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendant Gentlemen Sheet Metal Ltd. ("GSM") for unpaid withdrawal liability,[1] liquidated damages, interest, and attorneys' fees and costs. This matter is presently before the Court on Plaintiff's Motion for Default Judgment. Dkt. 7.[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge has reviewed the Motion and relevant pleadings and is filing with the Court these proposed findings of fact and recommendations. A copy of this Report and Recommendation will be provided to all interested parties.

---

[1] Withdrawal liability refers to the financial liability of an employer as a result of its early withdrawl from an employee pension benefit plan. *See* 29 U.S.C. § 1399.

[2] The relevant filings before the Court include Plaintiff's Complaint ("Compl.") (Dkt. 1); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 7); Brief in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp.") (Dkt. 8); Declaration of Debra Elkins Santi ("Santi Decl.") (Dkt. 8-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 8-2); and all attachments and exhibits submitted with those filings.

For the reasons set forth below, the undersigned recommends that the Court enter an order **GRANTING** Plaintiff's Motion for Default Judgment against Defendant GSM and entering judgment against Defendant in the amount of $2,876,337.64, consisting of Defendant's withdrawal liability in the amount of $2,155,662.12, liquidated damages in the amount of $431,132.42, and accrued interest on the withdrawal liability at the rate provided under the plan which is 0.0205% compounded daily and which results in $289,543.10 of accrued interest through August 31, 2025.[3] The undersigned further recommends that the Court award Plaintiff $4,735.81 in attorneys' fees and costs as well as post-judgment interest on the award of attorneys' fees and costs.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

On May 9, 2025, Plaintiff NPF filed this lawsuit against GSM pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221, and 4301 of ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401, and 1451.  Compl. ¶ 1. In essence, Plaintiff alleges that Defendant is liable due to its early withdrawal from the Fund in violation of its contractual and statutory obligations.

Defendant was properly served with the summons, Complaint, and related materials on June 25, 2025, in accordance with Rules 4(c) and (h) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. 4.  However, Defendant failed to appear or respond by July 16, 2025, as required by Fed. R. Civ. P. 12(a)(1)(A)(i).  As a result, on July 24, 2025, Plaintiff requested entry of default against Defendant (Dkt. 5), and on July 28, 2025, the Clerk of Court entered default pursuant to Fed. R. Civ. P. 55(a) ( Dkt. 6).

Plaintiff filed the instant Motion, accompanying memorandum, declarations, supporting documentation, and notice of hearing on July 29, 2025.  Dkts. 7–9.  Defendant failed to appear for the hearing on the instant Motion before the undersigned on August 29, 2025, and the Court took

---

[3]  Interest on withdrawal liability is governed by 29 U.S.C. § 1132 (g)(2)(B) and § 1399(c)(5). As discussed below, interest on the withdrawal liability will continue to accrue until paid in full.

the matter under advisement to issue this Report and Recommendation.  Dkt. 11.

## II.  SERVICE OF PROCESS, JURISDICTION, AND VENUE

### 1. Service of Process

Before a court can render default judgment, it must be satisfied that the defaulting party has been properly served.  Under Fed. R. Civ. P. 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."

On June 25, 2025, Plaintiff's process server served Defendant by providing the summons, Complaint, and related materials to Paul Appel, President of GSM. Dkt. 4. Therefore, service of process was properly affected upon an officer or a managing or general agent designated by law to accept service of process on behalf of GSM. *Id*.; Mem. Supp. at 5.  Accordingly, the undersigned finds that Defendant was properly served in compliance with the Federal Rules of Civil Procedure.

### 2. Jurisdiction and Venue

Before entering default judgment against Defendant, the Court must have (1) subject-matter jurisdiction over the claims, (2) personal jurisdiction over Defendant, and (3) venue must be proper in this judicial district.

First, the undersigned finds that this Court has proper subject-matter jurisdiction.  A federal district court has specifically been granted subject-matter jurisdiction over ERISA actions pursuant to 29 U.S.C. Sections 1132(e), 1132(f), and 1451(c).  In addition, jurisdiction is proper under 28 U.S.C. § 1331, which grants federal courts original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  Here, Plaintiff asserts claims under ERISA, which is a federal statute.  Compl. ¶ 1. Accordingly, this action arises under the laws of the United States.

Second, the undersigned finds that this Court has personal jurisdiction over Defendant. Under ERISA's nationwide service of process provision, personal jurisdiction is proper where a defendant has been validly served and maintains sufficient contacts with the United States such that the exercise of jurisdiction is consistent with the Fifth Amendment of the United States Constitution. *See* 29 U.S.C. § 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443–44 (4th Cir. 2015)(citation omitted)("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc*., 964 F. Supp. 1040, 1045 (E.D. Va. 1997).

To establish a Fifth Amendment challenge to personal jurisdiction, a Defendant must demonstrate that "the district court's assertion of personal jurisdiction over [them] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' reflected in the nationwide service of process provision." *Denny's, Inc. v. Cake*, 364 F.3d 521, 524 n.2 (4th Cir. 2004)(quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997). Where a defendant resides in the United States, it is "highly unusual ... that inconvenience will rise to a level of constitutional concern." *ESAB*, 126 F.3d at 627 (internal quotation marks omitted). Here, as noted above, Plaintiff properly served Defendant pursuant to the Federal Rules of Civil Procedure. Dkt. 4. In addition, Defendant is incorporated in the state of New York and maintains its principal place of business at 100 Beadel Street, Brooklyn, NY 11222. Compl. ¶ 7. Accordingly, based on valid service and Defendant's substantial contacts with the United States, this Court's exercise of personal jurisdiction over Defendant comports with the Fifth Amendment.

Third, the undersigned finds that venue is proper in this Court. Under ERISA, venue is

appropriate in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 1132(e)(2)("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."). In this case, the NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042, which lies within the Eastern District of Virginia. Compl. ¶ 5; Santi Decl., Ex. 7.

### III.  LEGAL STANDARD

Fed. R. Civ. P. 55 establishes a two-step procedure for a plaintiff to obtain a default judgment against a defendant. The first step requires the plaintiff to request the Clerk of Court to enter a default against the defendant when the defendant fails to respond by pleading or otherwise defending themselves. *See* Fed. R. Civ. P. 55(a); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Such failure effectively constitutes an admission of liability by the defendant. Once the Clerk of Court enters the defendant's default, the second step requires the plaintiff to apply to the court for a default judgment. This "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled…." *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). However, a default judgment is not automatically granted as a matter of right. Rather, "[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered…." *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014).

On a motion for default judgment, the defendant in default is deemed to have admitted the complaint's non-conclusory "well-pleaded allegations of fact" and the Court must evaluate whether the complaint states a valid legal claim by applying the standards used in motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003); *Grabert*, 8 F. Supp. 3d at 736, 739 (citing *Ryan v. Homecomings*

5

*Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face); *Burbach Broad Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)(court will "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor"). "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Vasquez-Padilla v. Medco Properties, LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017)(collecting cases)(citations omitted).

While well-pleaded factual allegations are accepted as true, the court must independently determine damages, relying on evidence contained in the complaint, affidavits, and other documents, rather than simply accepting the plaintiff's asserted figures. *See Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation omitted); Fed. R. Civ. P. 8(b)(6).

## IV.  FINDINGS OF FACT AND RECOMMENDATIONS

Based on the Complaint, Plaintiff's Motion for Default Judgment and supporting Memorandum, the Declarations of Debra Elkins Santi and Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following findings of fact and recommendations.

**1. The Parties**

Plaintiff is the collective name of the trustees of the NPF. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. Compl. ¶ 5. The NPF is a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). *Id.*

The Trustees of the NPF are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this suit pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). *Id.*

Defendant GSM is a corporation incorporated in the State of New York with a principal place of business at 100 Beadel Street, Brooklyn, NY 11222. *Id.* ¶ 7. Defendant is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meaning of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). *Id.*

### 2. Defendant is in Default

Under Fed. R. Civ. P. 55(a), when a party fails to respond to a complaint or otherwise defend, and such failure is established, the Clerk of Court must enter a default. Here, Defendant did not file any response to the Complaint or appear at the hearing on Plaintiff's Motion for Default Judgment. In fact, a review of the record indicates that Defendant has never appeared in this case. Accordingly, the undersigned finds that Defendant is in default.

### 3. Defendant's Contractual Obligations

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA NY") entered into a series of collective bargaining agreements (CBAs) with the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 28 ("Local 28"). Santi Decl. ¶ 4. Since at least 1982, GSM was a party to these collective bargaining agreements. *Id.* ¶ 5.

Most recently, the record reflects that Local 28 and SMACNA New York entered into a CBA covering the period from August 1, 2014, through July 31, 2017 (the "2014 CBA"). *Id.* ¶ 6, Ex. 1. Thereafter, Local 28 and SMACNA NY negotiated a Memorandum of Agreement modifying

certain terms of the 2014 CBA and extending the agreement through the period of August 1, 2017, to July 31, 2020 (the "2017 CBA"). *Id.* ¶6, Ex. 2. At the time the 2017 CBA was negotiated, GSM was a member of SMACNA NY. *Id.* ¶6, Ex. 3.

Subsequently, Local 28 and SMACNA NY entered into a number of successive agreements, including a CBA effective from November 1, 2020, through October 31, 2021 (the "2020 CBA"), and a further agreement effective from November 1, 2021, through October 31, 2025 (the "2021 CBA"). *Id.* ¶6, Exs. 4–5. GSM remained a member of SMACNA NY in 2020. *Id.* ¶6, Ex. 6.

Pursuant to the applicable CBAs, GSM was contractually obligated to submit monthly remittance reports and fringe benefit contributions to the NPF for all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 28. *Id.* ¶ 7, Exs. 1, 4, & 5, Art. XII, § 21. In addition, pursuant to the applicable CBAs, and by submitting such reports and contributions, GSM was bound to the terms and conditions of the Trust Agreement establishing the NPF, including any subsequent amendments thereto, as well as the policies and procedures adopted by the Fund's Board of Trustees. *Id.* ¶ 8, Exs. 1, 4, 5, Art. XII, Sec. 21(c), 7.

By letter dated August 15, 2023, from Defendant's counsel to Plaintiff, Defendant acknowledged its early withdrawal from the benefit plan and specifically stated it "completely withdrew from NPF in August 2022." Santi Decl. ¶ 7, Ex. 9. In so doing, Defendant conceded liability. However, Defendant claimed that its withdrawal liability was less than that calculated by Plaintiff and requested a review of the damages pursuant to ERISA § 4219(b)(2)(A). It is unclear whether a review was ever completed, but nevertheless Defendant failed to request arbitration as required by the statute and therefore waived its challenge to Plaintiff's calculation of its withdrawal liability.

### 4. Defendant's Withdrawal Liability

To "shore up the financial stability of multiemployer pension plans," *Bd. of Trs., Sheet*

*Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006), "Congress in 1980 passed the Multiemployer Pension Plan Amendments Act (the 'MPPAA')[,]" which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan[,]" *Plumbing Servs.*, 791 F.3d at 440 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984)). "An employer owes withdrawal liability when it makes a complete or partial withdrawal from a pension plan." *Id.* (citing 29 U.S.C. § 1381(a)). "An employer's complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan[.]" *Penske Logistics*, 820 F. App'x at 182 (citing 29 U.S.C. § 1383(a)).

When an employer completely or partially withdraws from a multiemployer plan, the designated administrator of the plan is required to (1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability and schedule of liability payments, and (3) demand and collect the amount of the withdrawal liability from the employer in accordance with the schedule. 29 U.S.C. §§ 1382 & 1399(b)(1). A "default" occurs when the employer fails to make withdrawal liability payments when due and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]" 29 U.S.C. § 1399(c)(5)(A).

"To state a claim for withdrawal liability under ERISA, Plaintiffs must allege that: (1) Defendant was required to contribute to a multiemployer plan; (2) Defendant withdrew from that plan; (3) Defendant was presented with a demand for withdrawal-liability payments; (4) Defendant failed to make certain payments when due; and (5) Defendant did not initiate arbitration." *Int'l Painters & Allied Trades Indus. Pension Fund v. Lettermen Signage, Inc.*, Civ. No. JKB-23-1059, 2024 WL 2882178, at *3 (D. Md. June 7, 2024).

The allegations in the Complaint state a claim for withdrawal liability, and the supplemental documents submitted to the Court support the relief requested in this action.

*First*, as discussed above, Plaintiff alleges that from 1982 to August 31, 2022, Defendant was bound by the relevant CBAs and contractually obligated to submit monthly remittance reports and fringe benefit contributions to the NPF for all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 28. Compl. ¶ 9; Santi Decl. ¶ 7, Exs. 1, 4, & 5, Art. XII, § 21. Plaintiff further alleges that Defendant was also bound by the terms and conditions of the Trust Document establishing the NPF. Compl. ¶ 10.

*Second*, Plaintiff alleges that it "determined that Defendant had affected a partial withdrawal from the NPF on or about August 31, 2022, within the meaning of Section 4203(a) of ERISA, 29 U.S.C. 1383(a)." Compl. ¶ 11. Although the Complaint does not detail the specific facts underlying Plaintiff's determination of Defendant's "partial withdrawal" from the NPF, the supplemental record confirms that GSM acknowledged "that it completely withdrew from NPF in August 2022, when it ceased covered operations and sold all of its assets in bona fide sales to third parties." Santi Decl., Ex. 9. Accordingly, the undersigned finds that Plaintiff has sufficiently pleaded that Defendant withdrew from the NPF in violation of its contractual obligation.

*Third*, Plaintiff alleges that it sent a notice of withdrawal to Defendant on June 6, 2023, advising that it owed withdrawal liability to the NPF. Compl. ¶ 12; Santi Decl. ¶ 4, Ex. 8. This notice "informed Defendant that withdrawal liability was assessed in the amount of $2,155,662.12 and that it was amortized, as required by Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), in a payment schedule to twenty-two (22) quarterly payments in the amount of $112,641.37 each, with the first payment being due August 1, 2023, and final twenty-third payment of $56,109.00 due February 1, 2029." Compl. ¶ 12.

*Fourth*, by letter dated November 7, 2023, the NPF "notified Defendant that it failed to make

the payment due August 1, 2023, under the amortized payment schedule and provided the opportunity for Defendant to cure the delinquency." *Id.* ¶ 16.; Santi Decl. ¶ 4, Ex. 10. The NPF notified Defendant in the same letter that its "failure to correct this delinquency within sixty days of receipt of the letter would constitute a default within the meaning of Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5)." Compl. ¶ 16. Plaintiff further alleges that Defendant failed to respond to the Fund's letter dated November 7, 2023, and did not cure its failure to make the required withdrawal liability payments. *Id.* ¶ 18. As a result, Plaintiff alleges that Defendant is now in default and is liable for the full unpaid principal amount of its assessed withdrawal liability, along with interest accruing on the delinquent amounts from the date the first missed payment became due. *Id.* ¶ 18–19.

*Fifth*, Plaintiff alleges that "Defendant did not initiate arbitration in accordance with the Fund's Trust Document and the time to do so has expired." Compl. ¶ 14. The record reflects that after Plaintiff issued a notice of withdrawal to Defendant on June 6, 2023, and that Defendant submitted a timely request for review of both the assessed withdrawal liability and the proposed payment schedule on August 15, 2023. *See* Santi Decl. ¶ 12, Ex. 9. However, it is unclear from the record whether Plaintiff ever responded to Defendant's objections directly.

Under applicable law, when an employer disputes a withdrawal liability assessment, the plan sponsor must, after a reasonable review, "notify the employer of (1) its decision, (2) the basis for its decision, and (3) the reason for any change in the determination of the employer's liability or schedule of liability payments.'" *Plumbing Servs., Inc.*, 791 F.3d at 441 (quoting 29 U.S.C. § 1399(b)(2)(B)). Nevertheless, even assuming no response was issued, that fact is ultimately immaterial. "An employer dissatisfied with the plan sponsor's response must demand arbitration within a 60–day period after the earlier of the date of the plan sponsor's notification that it has rejected the employer's request for review, or 120 days after the employer's request for review." *Id.* (citing 29 U.S.C. § 1401(a)).

11

Here, Defendant did not demand arbitration within 120 days of its August 15, 2023, request for review. As a result, the withdrawal liability assessed by NPF became due and payable on the schedule proposed by Plaintiff. *Id.* ("If ... the employer does not pursue arbitration, the amount assessed by the plan sponsor as withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'")(quoting 29 U.S.C. § 1401(b)(1)). Moreover, by failing to timely initiate arbitration, Defendant is deemed to have "waived review of all issues concerning the determination of withdrawal liability." *Id.* (citing *BES Servs.*, 469 F.3d at 375).

**5. Defendant's Withdrawal Liability, Interest, and Liquidated Damages**

Defendant's default entitles Plaintiff to "immediate payment of the outstanding amount of [Defendant's] withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

In a civil action brought by a multiemployer plan to enforce an employer's obligation to pay withdrawal liability, the Court must award a prevailing plaintiff the amount of the withdrawal liability, interest on that amount, and liquidated damages in an amount equal to the greater of the amount of interest or 20% of the withdrawal liability, as well as reasonable attorney's fees and litigation costs. *See* 29 U.S.C. § 1132(g)(2) (listing amounts the court shall award in a judgment in an action to enforce an employer's obligations to make contributions to a multiemployer plan under 29 U.S.C. § 1145); 29 U.S.C. § 1451(b) (providing that, in an action "to compel an employer to pay withdrawal liability," the employer's failure to pay withdrawal liability "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)").

The calculation of Defendant's withdrawal liability is detailed in an attachment to Plaintiff's withdrawal liability notice and demand letter dated June 6, 2023. *See* Santi Decl., Ex. 8. The calculation of interest owed on the amount of withdrawal liability is detailed in an attachment to

the declaration of Debra Elkins Santi, the NPF's Director of Operations. *See* Santi Decl., Ex. 11. The document reflects a withdrawal liability amount of $2,155,662.12 based upon the rules of the NPF and contributions to the Pension Plan made by Defendant between 1998 and 2021. *Id.*

Under 29 U.S.C. § 1132(g)(2)(B), the NPF is entitled to recover interest on unpaid withdrawal liability "at the rate provided under the plan." Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), further provides that interest accrues "from the due date of the first payment which was not timely made." In accordance with these statutory provisions and the NPF's Trust Document, a withdrawn employer is required to pay interest on delinquent withdrawal liability at a rate of 0.0205%, compounded daily. *See* Santi Decl. ¶ 18. The applicable interest rate on the withdrawal liability of $2,155,662.12 results in a total amount of $289,543.10 in interest that accrued between August 1, 2023, (the date of Defendant's first missed payment) and August 31, 2025. Santi Decl. ¶ 18, Ex. 11. Interest has continued to accrue daily since August 1, 2023, and will continue to accrue until the date of full payment. *Id.*

Pursuant to 29 U.S.C. § 1132(g)(2)(C), the amount of liquidated damages in this case is determined by the greater amount of the interest on withdrawal liability or 20% of withdrawal liability. Twenty percent of the $2,155,662.12 withdrawal liability is $431,132.42, which is greater than the amount of interest currently owed. The undersigned finds that Plaintiff is therefore entitled to liquidated damages in the amount of $431,132.42. *See* Santi Decl. ¶ 19, Ex. 11.

The undersigned has reviewed Plaintiff's calculation of withdrawal liability, including liquidated damages and interest, and finds Plaintiff's calculations to be correct and consistent with Defendant's contractual and statutory obligations. Therefore, the undersigned recommends that the default judgment entered in this case includes awards of $2,155,662.12 in withdrawal liability; $431,132.42 in liquidated damages, $289,543.10 in interest calculated through August 31, 2025 which will continue to accrue until the date judgment is paid in full. *See* 29 U.S.C. § 1132 (g)(2)(B)

and § 1399(c)(5). Therefore, the total unpaid withdrawal liability, liquidated damages and accrued interest through August 31, 2025 is $2,876,337.64. Elkins Decl., ¶ 21.

### 6. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g)(2), and the terms of the NPF's Trust Document. *See* Bardes Decl. ¶ 4; 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). In deciding what constitutes a "reasonable" number of hours and rate, the court considers the factors adopted by the U.S. Court of Appeals for the Fourth Circuit from the Fifth Circuit decision in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Robinson,* 560 F.3d at 243–44.

Here, Plaintiff requests an award of attorneys' fees and costs in the total amount of $4,735.81, consisting of $3,894.00 in attorneys' fees and $841.81 in costs. The requested attorneys' fees are based on 16.9 hours of counsel time spent at a pre-litigation rate of $275.00 per hour and

14

litigation rate of $300.00 per hour for partners and a pre-litigation rate of $140.00 per hour and a litigation rate of $165.00 per hour for paralegals. *See* Bardes Decl. ¶ 5. Time spent by counsel includes "researching legal theories, drafting and filing the complaint, arranging for service of process, drafting and filing clerk's entry of default, and drafting the motion for default judgment and supporting documents." *Id.* Plaintiff's costs include $436.81 in process server fees and $405.00 in filing fees. *Id.* ¶ 6.

In support of its request, Plaintiff submitted the billing records of its counsel, detailing the legal services rendered in connection with this case, the date on which those services were performed, the attorney who performed the services, and the time spent performing the services. *See* Bardes Decl., Ex. 1. Plaintiff has also provided a declaration by its counsel, Diana M. Bardes of Mooney, Green, Saindon, Murphy, & Welch, P.C., which summarizes the legal services provided on Plaintiff's behalf, the corresponding fees incurred, and cites comparable ERISA cases in which this Court found similar billing rates to be reasonable. *Id.*, Ex. 2–4.

Although the materials submitted in support of Plaintiff's request do not address every *Johnson* factor, they provide sufficient information to evaluate the factors most relevant to assessing the reasonableness of the hours worked and the hourly rates charged. Upon review of the submitted billing entries and the entire record the undersigned finds that the amount of time expended is within the usual and customary amount of time spent by an attorney on this type of case. *Id.*, Ex. 1. The undersigned further finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters. *Id.*, Exs. 2–4. Likewise, the undersigned finds that the costs incurred by Plaintiff are entirely reasonable and proportionate to the claims asserted.

Accordingly, upon review of counsel's submissions, the undersigned finds it appropriate and reasonable to award Plaintiff's requested attorneys' fees and costs of $4,735.81.

### 7. Post-Judgment Interest on Attorney's Fees

As discussed above, ERISA authorizes post-judgment interest on the withdrawal liability. The undersigned also finds that an award of post-judgment interest is appropriate on the award of attorney's fees and costs. A court shall order post-judgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 769 (E.D. Va. 2016), *judgment entered*, No. 1:16-CV-148, 2016 WL 6657395 (E.D. Va.Nov. 9, 2016)(citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F. 2d 1017, 1031 (4th Cir. 1993) ("federal law mandates the awarding of post judgment interest")); *PharMecia East, LLC v. Healthlink of Va. Shores, LLC*, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020)("In the Fourth Circuit, post-judgment interest can be awarded on the entire amount the court awards.")(internal citations omitted); *Barrella v. Village of Freeport*, 43 F. Supp. 3d 136, 195 (E.D.N.Y. 2014)("Post judgment interest is available for an award of attorneys' fees arising out of a judgment in the district court.")(internal quotation marks and citations omitted).

The undersigned finds that awarding Plaintiff post-judgment interest on the award of fees and costs is appropriate to ensure that Plaintiff receives the proper value of the fees and costs awarded against Defendant, regardless of when Plaintiff may be able to collect such fees and costs. The post-judgment interest as to fees and costs is to be calculated in accordance with 28 U.S.C. § 1961.

### V. RECOMMENDATION

For the foregoing reasons, and upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) **GRANTING** Plaintiff's Motion for Default Judgment against Defendant GSM; (2) entering judgment against Defendant in the amount of $2,876,337.64, consisting of Defendant's withdrawal liability in the amount of $2,155,662.12, liquidated damages in the amount of $431,132.42, accrued interest through August 31, 2025 which

is $289,543.10, and that interest shall continue to accrue at the rate of 0.0205% compounded daily until the withdrawal liability is paid in full; (3) entering judgment against Defendant in the amount of $4,735.81 for attorneys' fees and costs incurred in this action; and (4) awarding post-judgment interest on the award of attorneys' fees and costs to be calculated in accordance with 28 U.S.C. § 1961.

## VI.  NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William C. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

October 27, 2025
Alexandria, Virginia